IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:13CV73-RLV

| | |
|---|---|
| VICTORIA ESTHER KRYACHOV, ) <br> Individually, and on behalf of Others ) <br> Similarly Situated, ) <br>             Plaintiff, ) <br> ) <br>      vs. ) <br> ) <br> MOOSER MOTO, LLC, ) <br> B.J. MOOSE, Owner, ) <br> APRIL MILLS, Business Manager, and ) <br> JIM STRICKLEN, Business Manager, ) <br>             Defendants. ) <br> ) | **Memorandum and Order** |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss and Memorandum in Support, filed July 25, 2013, and all related materials. (Docs. 10-12).

### I.    PROCEDURAL AND FACTUAL HISTORY

On March 26, 2013, Plaintiff Victoria Esther Kryachkov ("Plaintiff"), on behalf of herself and others similarly situated, filed suit against Defendants Mooser Moto, LLC ("Mooser Moto"), BJ Moose ("Defendant Moose"), April Mills ("Defendant Mills"), and Jim Stricklen ("Defendant Stricklen") (collectively "Defendants") pursuant to 28 U.S.C. § 1332, alleging negligent misrepresentation, fraudulent misrepresentation, and violation of the Georgia Fair Business Practices Act of 1975. (Doc. 1/Pl.'s Compl.)

The facts, as recited in Plaintiff's complaint, are as follows:

Plaintiff is a resident of Raymond, Nebraska. (Pl.'s Compl., ¶ 4). On December 1, 2012, Plaintiff placed an order with Mooser Moto to purchase a Linhai Big Horn 28 4X4 UTV Standard Model, a Linhai UTV windshield, an Optional Winch-Standard 1 Year Warranty, and a

60" Snow Plow with Winch in dark green (collectively "utility vehicle"). (*Id.*, ¶¶ 4, 14). Mooser Moto is a company whose principal place of business is in Statesville, North Carolina. (*Id.*, ¶ 5). Defendant BJ Moose was the owner and operator of Mooser Moto. (*Id.*, ¶ 19). Plaintiff ordered the utility vehicle from Mooser Moto because Mooser Moto advertised a discount for all payments wired or made by certified check or money order. (*Id.*, ¶ 14). Plaintiff made the purchase using a certified check in the amount of $6,328.28, (Doc. 1-4, Pl.'s Exh. D), and received the advertised discount. (Pl.'s Compl., ¶ 14).

Plaintiff alleges that delivery of the utility vehicle was delayed and that, when she did receive the vehicle, it was "damaged and defective." (*Id.*) Plaintiff states that she spoke to Defendant BJ Moose and he agreed to "send a signed and dated letter stating that he [would] issue a full refund" and that once Plaintiff received the refund in full, she would ship the utility vehicle back to Defendants. (*Id.*, ¶ 15). Plaintiff filed a complaint with the Better Business Bureau ("BBB") regarding the damaged utility vehicle.[1] In response, Defendants offered Plaintiff a full refund and agreed to waive any restocking fees for the damaged product "once the unit [was] shipped back." (*Id.*) Plaintiff "disagrees with this response" by Defendants on the grounds that it was not the remedy to which she and Defendant BJ Moose agreed when she spoke with him about the defective utility vehicle. (*Id.*) Plaintiff states that "[h]ad [she] known that this would be the case with a purchase from [Defendants], she would have never purchased the vehicle from Mooser Moto LLC." (*Id.*, ¶ 16). On March 26, 2013, Plaintiff filed suit against Defendants "to plead for compensation." (*Id.*, ¶ 15).

---

[1] There is nothing in the record to indicate the actual date of the BBB complaint and the BBB complaint itself was not attached to Plaintiff's complaint. Plaintiff's Exhibit A is an online report from the BBB on Mooser Moto that demonstrates complaints had previously been filed, but this does not provide information on Plaintiff's specific complaint. (Pl.'s Exh. A).

2

Plaintiff further alleges that she is part of a class of "[a]ll purchasers of any vehicle, accessory, or any other item from Mooser Moto LLC in the United States." (*Id.*, ¶ 18). She states that she believes that there are "hundreds of members of the Class" who were similarly wronged, whom she will be able to identify through "business records regularly maintained by Defendants, their employees and agents," and who "can be notified through email, mail, and additional supplemental published notices, if necessary." (*Id.*, ¶ 19). Plaintiff alleges that Mooser Moto "deliberately advertised lower prices and discounts, as well as being a nationwide seller of different types of vehicles, for the purpose of luring customers to putative class members throughout North Carolina and the United States." (*Id.*, ¶ 17).

On July 25, 2013, Defendants filed an answer to Plaintiff's complaint (Doc. 12), and a Motion to Dismiss on the following grounds: for Lack of Subject-Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for Insufficiency of Service of Process pursuant to Rule 12(b)(5), and for Failure to State a Claim pursuant to Rule 12(b)(6). (Docs. 10, 11). In their answer, Defendants also proffered five affirmative defenses: Failure to Plead With Particularity pursuant to Rule 9 of the Federal Rules of Civil Procedure, Failure to Plead Individual Defendants Are Parties to Action, that Georgia Statutory Law does not apply, that Plaintiff failed to mitigate any damages, and that there is no basis to certify a class under Rule 23 of the Federal Rules of Civil Procedure. (Doc. 12).

On August 23, 2013, this Court issued an Order informing Plaintiff of Defendants' Motion to Dismiss and giving Plaintiff notice that if she failed to respond to Defendants' Motion within 30 days (by September 23, 2013), Defendant may be entitled to dismissal of all or part of Plaintiff's action as a matter of law. (Doc. 13). Plaintiff responded on October 3, 2013 in the form of a Plea for Justice. (Doc. 14).

## II. STANDARD OF REVIEW

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be raised by either litigant or the court at any time. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

When a court considers whether it has subject matter jurisdiction, the burden of proof is on the plaintiff. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). The court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (internal citations omitted). Yet, like a summary judgment proceeding, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.* at 769. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Subject matter jurisdiction can be satisfied in one of two ways: federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court will consider each of these in turn.

### 1. Federal Question Jurisdiction

Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 29 U.S.C. § 1331. In determining whether original jurisdiction exists due to the presence of a federal question, courts look to the plaintiff's "well-pleaded complaint," from which it must be clear that 1) plaintiffs' "cause of action 'arises under' federal law;" or 2) a federal law is "an element, and an essential one of plaintiffs' cause of action." S*ee Franchise Tax Bd. of State California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 9-11 (1983) (*citing Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 154 (1908))(*citing Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

Federal jurisdiction may exist over a state law claim if "the state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005);*see also Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir.1996). Federal question jurisdiction is not established by the existence of a federal counterclaim or defense. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009).

No federal question exists in the instant case, nor does Plaintiff claim that one is present. Plaintiff states that jurisdiction is proper pursuant to 28 U.S.C. § 1332, which speaks to diversity jurisdiction. (Pl.'s Compl., ¶ 2). Her claim alleges common-law fraudulent misrepresentation and negligent misrepresentation, as well as violation of the Georgia Fair Business Practices Act of 1975 as her grounds for recovery (*Id.*, ¶¶ 24-43), all of which are state law causes of action. None of these grounds implicate federal law in any way, whether directly or indirectly. To be sure, federal case law abounds wherein fraud is of central concern. Here, however, there is no

organizing feature discernable from the facts alleged providing a jurisdictional "hook" by which the case can be found to "arise under" federal law. Thus, federal law is not an element of Plaintiff's cause of action and federal question jurisdiction is not present.

### 2. Diversity Jurisdiction

Plaintiff's stated basis for subject matter jurisdiction in this court is diversity jurisdiction under 28 U.S.C. § 1332. (Pl.'s Compl., ¶ 2). In order to satisfy diversity jurisdiction, a plaintiff must meet two separate requirements. First, the dispute must be between "citizens of different States." 28 U.S.C. § 1332(a)(1). Second, the amount in controversy must exceed $75,000. *Id.* § 1332(a).

Plaintiff alleges, and Defendants admit, that Plaintiff is a resident of the State of Nebraska. (Pl.'s Compl., ¶¶ 4; Def.'s Motion, Answer and Further Defense, ¶ 4). Plaintiff further alleges that Mooser Moto has its principal place of business in Statesville, North Carolina. (Doc. 1 at ¶5). Defendants admit that Mooser Moto had its principal place of business in Statesville, NC, but allege that at the time Plaintiff filed suit, the business had been administratively dissolved. (Doc 12 at ¶ 5). Plaintiff and Defendants are silent as to the residence of the individual Defendants, BJ Moose, April Mills, and Jim Stricklen. Thus, diversity exists between Plaintiff and Mooser Moto, while more information is necessary to determine whether complete diversity exists between Plaintiff and the three other named defendants.

Because the amount in controversy requirement for diversity jurisdiction is not met, the complete diversity issue need not be resolved. Under Section 1332(a), the amount in controversy must exceed $75,000. The amount in controversy should be measured as "a reasonable reading of the value of the rights being litigated." *Atari v. McNeal*, 159 F. Supp. 2d 224, 226 (W.D.N.C.

2000). Courts should consider actual and compensatory damages, as well as punitive and trebled damages when they are available. *See e.g., Ashworth v. Albers Medical, Inc.*, 395 F. Supp. 2d 395, 313 (S.D.W.Va. 2005). Here, Plaintiff requests actual damages stemming from the incident as well as treble damages pursuant to the Georgia Fair Business Practices Act. (Pl.'s Compl.). Though Plaintiff does not specify in her complaint the amount in actual damages that she seeks, Exhibit D demonstrates that the she paid $6,328.28 for the utility vehicle. (Doc. 1-4). Plaintiff does not identify any other pecuniary or proprietary interest in this case from which additional actual damages might stem. This amount clearly falls short of the $75,000 threshold for diversity jurisdiction to attach. The amount would still fall short of the necessary amount in controversy even if Plaintiff received treble damages and the amount of recovery was tripled to a total of $18,984.84.

Plaintiff has not requested any punitive damages in this case and it is unlikely that the facts alleged would support a punitive damages award. North Carolina General Statute § 1D-15 limits when punitive damages are available to plaintiffs. N.C. Gen Stat. § 1D-15 (2013). In the present case, the only ground alleged that could possibly support a punitive damages award is Plaintiff's allegation that Defendants committed fraud. *See id.* (noting that fraud is one of three grounds for which punitive damages are available). Yet in order to receive punitive damages, a plaintiff must meet the high threshold of proving that fraud existed by clear and convincing evidence. *See Scarborough v. Dillards, Inc.*, 363 S.E.2d 640, 643 (N.C. 2009) (noting that the clear and convincing evidence standard requires evidence that would "fully convince" the trier of fact). Moreover, a case grounded in fraud requires more specific allegations of fact than do other claims. In the present case, Plaintiff's concession that Defendant BJ Moose offered her a full refund undermines any claim of fraud, let alone the requisite proof to warrant punitive damages.

7

Furthermore, even if Plaintiff were able to recover punitive damages, she could not recover them in addition to treble damages. The doctrine of election requires that a claimaint choose between punitive damages and any other remedy providing for multiple damages prior to judgment. In North Carolina, this is codified in General Statute § 1D-20. *See* N.C. GEN. STAT. § 1D-20 (2013). As noted above, it is unlikely that Plaintiff is eligible for either trebled damages or punitive damages. Yet even if she were, she could not recover both.

If Plaintiff were eligible for punitive damages and elected to receive them, she is unlikely to receive a sum sufficient to satisfy the amount in controversy requirement. The Supreme Court has stated that, while it consistently "declines…to impose a bright-line ratio which a punitive damages award cannot exceed…[,] in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages…will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Thus, even if Plaintiff were to receive the outer bounds of single-digit ratios of punitive to compensatory damages—a nine-to-one ratio—her total damages would only total $63,282.80, or more than $10,000 short of the amount in controversy threshold.

In sum, Plaintiff has not satisfied the amount in controversy requirement under 28 U.S.C § 1332(a). She has not specified in her complaint an amount that, standing alone, exceeds the $75,000 threshold. Further, even in the unlikely event that Plaintiff could receive trebled damages or punitive damages for this claim, she is prohibited by statute from receiving both and neither on its own satisfies the amount in controversy. As such, this Court does not have diversity jurisdiction over Plaintiff's claims.

### 3. Jurisdiction Over Class Actions

Plaintiff also brings her suit on behalf of a class of "[a]ll purchasers of any vehicle, accessory, or any other item from Mooser Moto LLC in the United States." (Doc. 1 at ¶ 18). Section 1332 creates separate diversity jurisdiction requirements for class action lawsuits. *See* 28 U.S.C. § 1332(d)(2). First, the class must be certifiable under Rule 23 of the Federal Rules of Civil Procedure or comparable state or judicial rule. *Id.* § 1332(d)(1)(B). Next, the aggregate amount in controversy for the entire class must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(2).[2] Finally, diversity of citizenship is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2)(A).

In the present case, Plaintiff's claim likely fails each of the first two requirements noted above.[3] Such analysis is unnecessary, however, as this Court is compelled to decline jurisdiction even if these requirements were met. Subsection 1332(d)(4)(A)(ii) states that "[a] district court

---

[2] A federal court can have supplemental jurisdiction over a class action under 28 U.S.C. § 1367 when the aggregated amount in controversy is less than $5,000,000 but when diversity exists and one named representative plaintiff is individually claiming in excess of $75,000. *See Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 122 (4th Cir. 2001). As noted above, Plaintiff's claim does not meet this threshold. There are no other representative plaintiffs named in this case.

[3] The Fourth Circuit has noted that "determining whether a class exists" is an implied and "essential prerequisite to maintaining a class action" under Rule 23. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976); *see also Rhodes v. E.I. du Pont De Nemours & Co.*, 253 F.R.D. 265, 270 (S.D.W. Va. 2008) ("In addition to the requirements set out by Rule 23, there is an implied requirement that the proposed class be ascertainable."). Beyond conclusorily stating that there is a class of "[a]ll purchasers of any vehicle, accessory, or any other item from [Defendants]" (Pl.'s Compl., ¶ 18), Plaintiff does nothing to help ascertain who the members of this putative class are. There is also nothing in the record from which this Court could determine whether the $5,000,000 amount in controversy requirement is met. Indeed, Plaintiff fails to mention this requirement anywhere in her complaint. In order to determine whether the matter in controversy meets the $5,000,000 requirement, the individual claims of the members of the class must be aggregated. 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013). In the present case this is impossible, as Plaintiff never specifies with any particularity the number of members of her class or the damages amounts the putative class seeks to recover.

*shall* decline to exercise jurisdiction under [§ 1332(d)(2)]…[when] during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Id.* § 1332(d)(4)(A)(ii) (emphasis added). This is known as the "local controversy exception" and it requires courts to decline jurisdiction. *See Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. Appx. 732, 734 (10th Cir. 2010) (unpublished). Indeed, the use of the word "shall" demonstrates that courts have no discretion over whether to decline jurisdiction under this subsection. *See Air Line Pilots Ass'n v. U.S. Airways Group, Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) ("[I]t is uncontroversial that the term "shall" customarily connotes a command."). In the three years preceding this case, there have been no suits of the same or similar nature filed against Defendants, either collectively or individually, by Plaintiff or anyone else. As such, this Court is required to deny jurisdiction over the putative class action pleaded in the present matter.

## IV.   CONCLUSION

In sum, this Court does not have jurisdiction over Plaintiff's claims. None of Plaintiff's claims concern a federal question under 28 U.S.C. § 1331. In addition, Plaintiff has not met the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. This Court is also compelled to decline jurisdiction over Plaintiff's class action under 28 U.S.C. § 1332(d)(4)(A)(ii). As such, there is no subject matter jurisdiction in this Court, and this case must be dismissed.

## V.   ORDER

For the reasons stated herein, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is hereby **GRANTED**. Because this Court lacks subject matter jurisdiction over Plaintiff's claims

for relief, Defendants' other Rule 12 motions and affirmative defenses are not properly before this Court, and they are hereby **DISMISSED** as **MOOT**.

Signed: November 13, 2013

Richard L. Voorhees
United States District Judge